MACEK *v.* BETHLEHEM STEEL CO.

[No. 26, October Term, 1951.]

*Decided November 2, 1951.*

The case was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*I. Duke Avnet* and *Johnson Bowie* for appellant.

*Charles C. G. Evans*, with whom were *Marbury, Miller and Evans*, and *Kenneth C. Proctor* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

Louis A. Macek, an employee of the Bethlehem Steel Company, filed suit in the Circuit Court for Baltimore County to recover back wages. As set out in the bill of particulars, the claim was that he should have been paid $1.69 per hour for the period from August 1, 1947 to July 18, 1948, instead of $1.53 per hour which he received, and that he should have been paid $1.86 per hour for the period from July 18, 1948 to August 1, 1950, instead of $1.72 per hour which he received. Prior to August 1947, Macek had received the pay of an "A Machinist", but on August 4, 1947 his job was reclassified as "Locomotive Repairman A". The suit challenges the validity of the reclassification under the union contracts. At the conclusion of the testimony the trial court granted a motion for directed verdict. The appeal is from the judgment entered on the verdict.

The reclassification of jobs at the appellee's plant was made pursuant to a directive of the National War Labor Board and a collective-bargaining agreement of April 11, 1947. After the reclassification of the appellant's job his duties remained the same, but he was placed in a category receiving a lower rate of pay. However, as provided by the agreement, he was given a personal rate of pay in excess of that fixed for a "Locomotive Repairman A," based upon his actual average earnings for

the first quarter of the year 1947, plus any wage increases. This adjustment was made retroactive, the rate working out at about $1.62 per hour. Thus, Macek suffered no diminution in wages as a result of the reclassification. His claim is that he has not received the top rate of an "A Machinist," as now defined, during the periods mentioned. It was stipulated that the difference amounted to $696.00.

Serious questions were raised at the argument as to the right of the plaintiff to invoke the court's aid in a wage dispute grounded on breach of a collective-bargaining agreement providing a specific remedy for grievances by hearing before a joint committee of representatives of the Union and the Company. Such a grievance was filed by Macek and withdrawn by his Union representatives after a hearing at which Macek was present. In effect, these representatives agreed that the reclassification was correct. For present purposes we may assume, without deciding, that Macek was entitled to resort to the courts for relief. There is virtually no dispute as to the facts and we find no issue of fact in the case that would call for determination by a jury. It is undisputed that Macek performed the same duties before and after the reclassification. The only question is a legal one, whether the reclassification was permissible under a proper interpretation of the contracts.

The contract of April 11, 1947 between the Company and the United Steelworkers of America recites that it was entered into for the purpose of carrying into effect the Directive Order of the National War Labor Board dated November 25, 1944, for "Elimination of Wage Rate Inequities". It provides that "existing jobs be described and classified" in accordance with an attached "Manual for Job Classification".

The third article of the agreement reads, in part, "Each job classification agreed to and signed by the Company and the Union on or prior to the date of this agreement is hereby ratified and confirmed. On and after April 28, 1947, * * * (b) when the classifications

of all the maintenance jobs in any department shall have been agreed to by the Company and the Union or determined as hereinafter set forth, the Company shall put such classifications into effect as of April 28, 1947. * * * On August 1, 1947, the Company shall put into effect as of April 28, 1947, each job classification which prior thereto shall have been agreed to by the Company and the Union and which shall not theretofore have been put into effect * * *."

The fifth article, amending Article V of an earlier agreement, provides (section 1) "The parties hereto recognize that it may become necessary or desirable from time to time at one or more of the plans or works that the Management classify new jobs or reclassify existing jobs or adjust then existing incentive wage rates because of (a) the creation of new positions, (b) changes in equipment, (c) changes in manufacturing processes or in methods or standards of manufacture or production, (d) the development of new manufacturing processes or methods, or (e) mechanical improvements made by the Company in the interest of improved methods or products. An existing job shall not be reclassified, however, unless such changes or events shall alter the requirements of such job as to training, skill, responsibility, effort and surroundings * * *." Section 2 provides a method of putting the changes into effect "whenever after April 28, 1947, any of the changes or other events specified in Section 1 of this Article shall occur." Substantially the same provisions are incorporated in the later agreement dated April 30, 1947.

The appellant contends that the reclassification of his job was improper because none of the changes or events referred to in Section 1 of the fifth article of the agreement occurred. In short, he contends that since he had been paid as an "A Machinist" prior to April 28, 1947, his position was frozen as of that date and could not be changed except in accordance with the provisions of the fifth article of the contract. We find no merit in the contention.

The limitations set out in the fifth Article apply only to changes subsequent to the reclassification contemplated by the third Article. There is no evidence that his job classification had been agreed to and signed by the Company and the Union prior to April 28, 1947. After extensive study and agreement, the change was put into effect on or about August 1, 1947, in accordance with the provisions of the third Article. Not only is the meaning of the language used clear and unambiguous, but to adopt the construction urged by the appellant would defeat the whole purpose of the agreement, to remove existing inequalities in pay rates. The limitations of the fifth Article only apply to changes made after existing inequalities have been removed through reclassification.

An examination of the Manual for Job Classification confirms this view. "Through the use of this Manual the worth of any job in relation to other jobs is determined by analyzing and assigning numerical values to twelve basic factors in the job. * * * This Manual is to be used to classify the job under consideration without regard to the employee working on such job or to the existing wage rate or earnings." "Machinist" is classified under the title "Craft Jobs" and it is stated: "The nature of steel plant work is such that job requirements of certain limited purpose jobs which now carry titles which are the same as or similar to the above-mentioned craft jobs do not permit such jobs to be considered craft jobs. Such jobs shall be considered as limited purpose jobs related to craft work and this Part II shall not apply to such jobs." The Manual was agreed to by the Company and the Union as the basis of reclassification. No contention was ever made by the Union that the quoted clause should be reviewed or modified, and it was clearly binding upon the parties.

We find nothing in the evidence to suggest that the particular job in question was improperly reclassified. On the contrary, it was shown that the appellant could not be reclassified as an "A Machinist" because he was

not performing a craft job. No craft job existed in the Locomotive Repair Shop where he was employed. He did not use the tools and equipment with which a machinist, as defined, customarily worked. It is clear that the title under which he worked prior to the re-classification was a misnomer. He admitted that the described duties of a "Locomotive Repairman A" were the duties which he performed.

*Judgment affirmed, with costs.*